Good morning, Robert Hennessey on behalf of Mr. Gonzalez. Good morning. Good morning. And with leave of the court, I would request that I be allowed two minutes for rebuttal. You may. Thank you very much. Your Honor, this is, at issue in this case is a warrantless search of a closed green canvas bag that was deposited and located in the locked basement of the defendant's apartment building. The district court concluded that the warrantless search of this bag was justified on abandonment grounds, and the government argues on appeal that it is also justified on consent grounds. Mr. Gonzalez disagrees with both of these assessments. I'd like to turn first to the abandonment argument that was brought forward, not argument, but the finding brought forward by the district court judge. The legal test for abandonment looks at the totality of the circumstances, but pays particular attention to two factors, explicit denials of ownership and any physical relinquishment of the property. I don't want to interrupt you, but obviously, if we, if we agree with the government that um, one grounds was consent, then we don't really have to deal with the abandonment question, and I'm trying to figure out, since, if the court concluded that there was consent, and it's a question of fact, that's, yeah, so, so, just, just, what do we do with that? I'm understanding your question. If the court agrees with the government, not only that consent exists as an alternative basis for affirmance, but that the judge actually made findings to support a find of consent. Is that, yeah. So, I don't, number one, I, I think that, um, it would be, the court should not do that, and for the reason that the judge didn't make any findings that would support consent, valid consent to search this bag. The judge's findings on consent is, he said, um, um, I believe that the, uh, the defendant consented to the landlord's option to allow police into the basement. So, it says the defendant, who had, who had no key to the basement for seven, six months, gave oral consent to the landlady's choice whether to open the basement. Yes. The landlady gave consent. To open the basement. So, it really comes down to, so, I think this finding, which I don't think is probably going to be clearly erroneous, was consent to search the basement was granted, so it becomes a question of, is the bag somehow off limits to that consent, right?  Yes. And, and my understanding of the government's argument is that, um, it is, the, the consent obtained through this process that you were just describing, the judge found, uh, qualifies under Gimeno to justify a search of not only the basement, but all of the, any closed container contained within the basement. Right. And it's my argument that that is not, that, that those findings do not support that version of consent. And so, why? I mean, there's clearly a bag at the bottom of the laundry chute in the area of the basement that, as I understand, is kind of the open area of the basement. Yes. The police come in, it's a search warrant execution. Well, uh, just not to interrupt, but to clarify, it is not a search warrant execution for the  There is no search warrant for the basement. Right. And so, they look in the kitchen and they see the chute and they think there might be stuff down there and they get the consent.  So, with, so tell me then, specifically then, okay, why does Gimeno not apply to that? Okay. So, my, you know, our position is that Gimeno, the holding of Gimeno, is that voluntary consent, and unless there's any, you know, there, there was contradictory evidence with regard to voluntariness, but I think the judge made a finding that it was voluntary, um, to search a defined area for a specifically identified object that is not otherwise limited generally includes authority to search containers therein. And the reason, you know, the facts of Gimeno sort of illustrate this. The facts in Gimeno, they stop a car, they say, we want to search your car for drugs, and the U.S. Supreme Court said, well, that affirmative voluntary consent in those, in those circumstances includes consent to search any place that might contain those drugs, which were identified as the target of the search. Here, the agents never expressed the object of their search, which undermines that sort of aspect. They had a warrant, right, to search for, uh, drug-related items, correct? They did, for, in, in the upstairs apartment. Why do you have to have a conversation beyond what the warrant had, drugs, they were looking for drugs, they went down to the basement to search for drugs after obtaining consent? Well, I would say that the reason that you would have to have that, number one, is because this is warrantless conduct, so that's presumptively unlawful, unless the government carries its burden of showing valid consent. But, but your argument is, they didn't know what, the person granting consent didn't know what the police were looking for, but they would know based on the warrant, correct? Well, my argument is that they didn't, and, and I think the record supports this, there was no communication at any time to either of the people what they were searching for, in terms of whether they would have known because of just a, a general understanding of what was going on with the search, um. Well, I, I don't, I don't understand that the warrant itself, which it, it, uh, conceitedly did not include the basement area, it talks about they're, they're looking for drugs. Yeah. And so, and so, why wouldn't the defendant be unnoticed that that was the purpose of the search? Well, my, my understanding is there was no evidence that the, um, the warrant was reviewed with the defendant, but in any event, um, what we're talking about is an objective person viewing the actual exchange between the defendant and the police. Um. You're saying the warrant wasn't given to him, so he didn't know the subject matter of the warrant? Is that what you're saying? Yeah, I, I'm saying that there's no evidence that the warrant was given to him or this was communicated to him, therefore, the government's burden of showing valid consent under Jimeno is undermined by their failure to make a record of that. This is exacerbated, of course, I'm sorry? Are you saying the record supports that conclusion? I'm saying that the record does not support any conclusion that this was communicated by the police to the defendant at the time that they were seeking consent. Maybe not orally, but are you saying that there's, that the record supports a finding that they did not give him the warrant? I don't recall that being discussed on, in either of our briefs, but I don't remember that being asserted as a basis for, um, his knowledge. My understanding of the government's argument is that he would have known because he had previously possessed this, the items that there were. Even if we accept that, when I look at Infante Ruiz, I mean, it points out this distinction that you're drawing, but then when I go to the actual holding, it says, still, we're the above the sole distinction, and what we're talking about is the sole distinction. The next thing it says is Jimeno would still allow a finding of consent. So I guess I'm not sure this is a dispositive fact. I understand Infante Ruiz gives you a little nod, but then at the end, it takes it away. No, I understand that. And I also, um, I'd like to address this quickly while I have time. I don't think it is the sole distinction between Jimeno lining cases and what happened here. I think a second and very important distinction is that the consent that was provided, unlike in Jimeno, was not unlimited. What was given by the defendant was, um, permission to defer to the landlord with respect to whether or not they could enter the basement. So – And then they got that. And then they got that from the landlord. So then our – Without limitation. I'm sorry, without – Without limitation. Well, the judge, you know, he doesn't actually discuss this in his findings, but made pretty clear that there was no basis to conclude that the landlady who did not live there, who stored none of her own materials in that basement, had the authority to open up that bag. For sure, she had authority to – I mean, he says, if she'll let you in, because she has the key, he doesn't have the key. If she'll let you in with the key, I give you whatever consent I have, which was, I guess, unlimited. So why is it on – why is it on the limitation really go to her? I mean, she's letting him in to the basement. She's letting him in and – I'm sorry. Go ahead. But it's his sort of bag. Yes, she's letting him into the basement in his bag. And the question is, if they're going to be relying on her consents to get into that bag, she must have had authority over that bag, is our position, that she must have had her own authority to enter that bag. And I think the facts do not support that conclusion that she did. Okay. Thank you. You'll have two more minutes. Thank you. Thank you, Counsel. At this time, would Counsel for the Government please introduce himself on the record? Good morning. Donald Lockhart for the Government. May it please the Court. I'll start with the consent issue and work to abandonment. On consent, it's important to remember that there are actually three phases to the consent here. The agents first ask the defendant, can we search the basement? He says yes, provided the landlady consents. They go to the landlady. She consents. And actually, then they go back to the defendant. They say, the landlady's consented. Do you still consent? He says yes. At no point in time does the defendant place any sort of limitations on the areas within the basement that can be searched. Judge Woodlock found at the hearing, at page 175 of the record appendix, that at a minimum, that consent embraced the common areas of the basement. Does the landlady have had the right to look into a tenant's bag? So that, as we said in the brief, is actually a red herring because it's the defendant's consent that gets us in the bag. So it doesn't matter whether the landlady can consent. If the defendant's consent was limited to the landlord's consent, why isn't that a limitation? No, the two aren't coupled in the way you're suggesting. The way it worked is that the defendant broadly consented to a search of the basement without limitation so long as the landlady consented. The landlady, in turn, consented to a search of the basement without any limitation. They came back to the defendant and he then consented again to a search of the basement without any limitation. So the contingency concerning the landlady was with respect to the general search, not with respect to spaces within the basement that the officers could go or containers that they could open. And so on these facts, Judge Woodlock didn't clearly err, and that's the standard of review, in finding that, at the very least, the agents were allowed to get into the common area of the basement. Now, Gimeno and Gimeno-based decisions of this court then supply the next step in the equation, which is that that general consent clearly allowed the agents then to unzip the canvas bag that was sitting on the floor. Is it either of their general consents? I mean, it's... Well, what we say in the brief is that it's clearly the defendant's consent that gets them in the bag, therefore you don't need to address the question. What if they didn't have that? What if they just said, landlady, can we search the common areas? We're doing a search warrant at this house. She says, okay. Can they look in bags in the common areas? So our position is that the landlady's consent would be sufficient to get in the bag. It's a question you don't need to reach. Judge Woodlock actually expressed reservations, at a minimum, on that point. We think, in a situation where the landlady, who's the owner of the property, has a valid right to let the agents into the basement... But under Gimeno, they don't know whose bag is whose. They're just looking in the bags that are in the common area. They could be other tenants. I mean, it's not the ideal. Once they got consent, then the bags become fair game, as long as they're subject to what the subject of the search is. But there's no, like, I have to prove that's your bag. Correct. Correct. But for all these reasons, I don't think it's important to decide whether, in the abstract, the landlady has a right to consent to the bag. That's just the wrong question, I think. The question is, as soon as... Why shouldn't we view the defendant's consent as limited by the landlord's ability to search? In other words, her authority over and control over items in the basement, or in the space of the basement. Because once both of them give general consent to a search of the basement, it follows from the Hemeno and Hemeno-based decisions, that the officers can go into containers that could hold the drugs. So we don't get into the question of, sort of the retail question of, who precisely consented to a search of the bag? We say, it's enough... Was it just the government's largesse that you agreed not to admit anything from the locked room or the ceiling? Well, that's a separate question, which we abandoned at the suppression hearing. There was a dispute over whether they could go into the locked storage facility. We initially fought that, and we gave up on that, and we only sought to preserve the two kilograms of cocaine in the canvas bag. And so that was the focus of it. The other thing to notice, by the way, is that in terms of the object of the search, keep in mind, the defendant is the subject, sort of the key subject, of a 38-page search warrant affidavit, which makes clear that he's the one operating this drug dealing. How does that fit in? I mean, I understand where Infante Ruiz can still support you, but there's a discussion in there about sort of knowledge of like, how does that work if the search warrant's not shared with him? Right. So, first of all, there's no case, whether this court or the Supreme Court, that holds that the officers, to get valid consent, have to tell the defendant the precise object they're searching for. There just isn't. As you pointed out, Infante Ruiz sort of dwells on that issue for a bit, and then ultimately says Jimeno would apply to that case, notwithstanding the fact that the officers in that case did not tell the defendant that there was a search for drugs, and Infante Ruiz invalidates the consent on a completely different ground, which is that the third party who consented to the search of the briefcase in the locked trunk, expressly told the officers on the scene that the briefcase belonged to the defendant. So it's clear that the officers don't have to have that kind of conversation. On the question- Just on that point, understanding your legal argument, and set that aside for a moment, just factually, is it your position that the defendant did or did not know the object of the search as a factual matter? Yeah, as I was about to argue a minute ago, there's actually a very strong record basis to conclude the defendant did know from the following sequence of events. Number one, as I said, he's the subject of this lengthy search warrant affidavit. He's the one dealing drugs from this apartment. The police come in, the officers come in, they find him in the kitchen. In the kitchen, they also see the door to the laundry chute. They look down the laundry chute, what do they see at the bottom? Laundry? No. A canvas bag. The defendant's in the kitchen when this is taking place, and the officers then ask for his consent. The defendant is the one who's dealing drugs. The defendant is the one who later admits that he's the one who threw the drugs down the chute. It's a fair inference to the officers, even without the benefit of his later suppression hearing testimony, that that's exactly what happened after they entered. Everyone in the room knows what the object of the search is. It's a search for drugs, and if you want to get granular about it, there's even record evidence suggesting that they want to search that bag. Not that you need that evidence, but the evidence exists in the record. Tell me again, what do they see in the kitchen that makes... So when they come into the kitchen after entering to execute the search warrant, they find the defendant in the kitchen, and they also find the laundry chute, which is in the kitchen. Right there. They look down the laundry chute, and they can see the bag lying on the floor of the basement. Now, is there a suppression evidence saying that the officers made a remark about that to the defendant? No. But does the defendant need to know precisely- The question, or at least the way you can read her memo, the question is, was the consent justifiably viewed to look in any container that might have drugs, right? Yeah. Why do we think that consent was to look for things that might have drugs? Because he is a drug dealer? No, because the 38-page search warrant affidavit talks in immense detail about his ongoing drug operation at the house, from which you can infer that he himself, as the one who dealing drugs, knows when the agents come in with a search warrant that this is what it's for. It's not for evidence of a fraud, a crime, or some other crime, coupled that with the fact that they find him in the kitchen, they look down the laundry chute. The police know that, but this is, I guess, where I don't quite fall. The police know it's not a fraud investigation. Well, he knows it because he's the one who's dealing the drugs. We can't blanket reality. He's the one dealing drugs out of this first-floor apartment. And knowing involuntary consent, and knowing being an operative word in that, I mean... Yeah. And any defendant in these... I mean, it's just as likely that you're not going to throw your laundry down one piece at a time. You're going to put it in a canvas bag and throw it down the chute. We don't need evidence that the defendant was aware of the likelihood that they would look in this specific bag. All we need is a generalized consent for a search of the basement, which was given. Under Gimeno, that consent extends to opening up containers that could reasonably contain the items that they're searching for. In terms of what the defendant would have expected, in terms of the nature of the search, it's very clear that it's going to be a search for drugs. The agents don't have to expressly tell them that. He's the one dealing drugs over a course of months from this very apartment. And he's the one who's standing in the kitchen when they enter to execute the warrant, and when they look down the laundry chute and see the canvas bag. That argument doesn't sound like an objective look. Oh, it is objective. Yes, but not... I mean, from an objective perspective, you're imputing that the defendant himself knows that he's dealing drugs. That's from a reasonably objective person in the defendant's shoes. That doesn't match up. Well, we disagree. You just give me a minute on abandonment? Yeah. So, the abandonment argument is straightforward. The defendant, when the police are coming in to execute the warrant, deliberately throws this bag down the laundry chute into a common area space in the basement to which he himself cannot access because, as he tells the officers right on the scene, he lacks the keys to the basement he himself can't get in. Judge Woodlock took a look at the totality of those circumstances. The throwing of the bag down the laundry chute into a space the defendant had no ability himself to access and decided that... I guess that's my question. He had no access at the given moment, but it seems that the landlady had no objection to him going there, so it was really a step to get the key. Is that what we really mean by abandoning it? Well, remember that in most of the abandonment cases that this court has discussed where the defendant is, say, fleeing and abandons something, it's a brief moment in time, temporally. So the temporal factor doesn't cut against abandonment. The fact that a defendant who's fleeing and tosses drugs, if the police don't see what he's done, might be able to run around and retrieve them five minutes later doesn't affect... If you were to define abandonment, it's to give up property for any period of time when you cannot access it? That's part of the equation, I would say. It's the key part of it, and remember that the case law says that for abandonment purposes we're not tying it to property concepts. So the fact that the defendant may retain at some level a property interest in the canvas bag or whatever he's temporarily discarded, and his subjective intent perhaps to return and get it, if he can, let's say with the landlady letting him into the basement, doesn't affect the abandonment analysis, so long as at the moment in time that we're talking about when the officers have unzipped that canvas bag, the defendant has, at that moment in time, discarded it for purposes of the abandonment. Is abandonment a clear error standard as well? So the majority, in fact, it seems like the unanimous circuit court view, which is supported by something like six, seven cases cited in the red brief, is that it's clear error review. This court suggested in Soto Beniquez that it's de novo review. We don't see that as a definitive holding on that point, but we don't think you need to resolve it in this case, because whether it's de novo or clear error, the abandonment ruling is well supported and would survive either standard of review. Thank you. I just want to pin it down. So the evidence of abandonment is that he was unable to get into the basement? No. It's, as Judge Woodlock said, it's really a totality of several factors. It's the fact that as the agents are executing the warrant, and he knows they're coming in, he deliberately, not accidentally, throws these drugs down the laundry chute into, and now to your point, into a space that he himself cannot access. Now, if a defendant merely threw his drugs into a common area space, we would still say there's abandonment. For example, the case of a large apartment building, you have a vestibule, defendant is being chased by the police, he throws drugs in a common area space of that big building, under a couch, something like that. That's also abandonment. His access, it seems to me like that's a red herring, whether or not he could get access to the basement at that time or not. It's a question of whether or not others would be able to access it in a public space where he threw it. If you have somebody in a park, they throw it in a trash can as they're running, he has access to it, but somebody else does, and that's a problem for abandonment, right? Well, actually, the fact that the other people in the building and the landlord have unfettered access to a space that he does not have access to, we think actually underscores the fact that this item has been abandoned. Even if he did have access to the basement at the time, we would still be contending that there was abandonment. If I leave a bag in a common area of my apartment, let's say I live in a small apartment building where a few people can get to it, but I put my bag in there and we don't look in other people's stuff, I have not abandoned my bag, I have not lost my expectation of privacy in my bag. So here's the key distinction, Your Honor. You're positing a storage scenario. This is not the storage scenario. We don't have a canvas bag that's sitting on the shelf of a basement or, excuse me, in a cabinet or in some other place that would signal to people that the bag belongs to a particular person. This is a bag that's sitting naked, exposed, on the basement floor, directly underneath a laundry chute, next to a washing machine. By the washing machine. By a washing machine, right. But that doesn't signify that it's being stored there by somebody. I don't understand why it doesn't signify that it's laundry. Well, take a look at the photo of the bag and assess whether you think it's something that would naturally contain laundry. If you look at the photo in the addendum to the brief, you'll see a little, like a cooler style canvas bag like that. Now, you know, maybe you could throw some socks in it, but it's not naturally the sort of thing that would hold laundry. It's not a classic canvas laundry bag or a plastic laundry bag. It's this thing which looks very unlike anything anyone would put laundry in. Thank you, Mr. Lockhart. Thank you. At this time, would counsel for the appellant please reintroduce himself on the record to begin? He has two-minute rebuttal. Again, Robert Hennessy on behalf of the appellant. I'm just going to run, given the last comments, through a bit my arguments with respect to abandonment really quickly. As I was saying earlier, there are two particularly important factors with respect to abandonment. One is explicit denials of ownership. Those do not exist in this case with respect to anyone. The other is the physical relinquishment of property. Our position is that by putting a bag into a locked basement to which there was no public access that Mr. Gonzalez had the permission and authority to access through his lease and in which to store things through an agreement with his landlord, he did not relinquish any expectation of privacy in that bag. The fact that it's a common area I don't think is dispositive. I want to cite the Moran case where there's trash bags belonging to a defendant in his sister's storage space, which is accessible to multiple people. Like this, it was locked from the public but accessible to multiple users of this area in which given his permission and access to it, which was by agreement, he retained an expectation of privacy in there. Also in terms of the common area aspect of things, the seminal common area, no expectation of privacy case in the First Circuit, the Hawkins case, I think is worthwhile to look at because what happened in Hawkins is that there was an entry into a common area, a basement, by the police that was ultimately held to be justified because it was a common area and in which the police encountered closed containers. And what did those police do? They went and got a warrants to open the closed containers that were contained in the common area of the basement. And this court in that case said that was exactly what they were supposed to do. And I think that's exactly what they were supposed to do in this case. I appreciate your time. Thank you. Just one factual scenario, does the record support the finding that the police saw him toss the bag down the chute? No. They just looked down the chute and saw the bag? No. The record says that when the police entered the house, he was in the vicinity of the kitchen. They didn't see him place anything. And then during the search, they themselves looked down the chute. They didn't see him place anything on the chute. Thank you. Thank you. Thank you, counsel. That concludes our argument in this case.